UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

-oOo-

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | 2:06-CR-00186-PMP-PAL |
| vs. | ) | **ORDER** |
| POWER COMPANY, INC., doing business as THE CRAZY HORSE TOO, and FREDERICK JOHN RIZZOLO, | ) | |
| Defendants. | ) | |

Before the Court is Defendant Frederick Rizzolo's Motion to Clarify or in the Alternative Reduce Restitution Order (Doc. #506), filed on August 8, 2013. Plaintiff United States of America filed a Response (Doc. #509) on August 23, 2013. Defendant filed a Reply (Doc. #510) on August 28, 2013. Plaintiff United States filed a Supplement (Doc. #512) on November 13, 2013. The Court held a hearing on this matter on November 15, 2013. (Mins. of Proceedings (Doc. #513).)

By this Motion, Defendant Rizzolo seeks to eliminate the $4,250,000 forfeiture imposed as part of his sentence, arguing that upon substitution of the Crazy Horse Too, the $4,250,000 forfeiture was satisfied. Alternatively, Rizzolo argues the $4,250,000 forfeiture, restitution in the amount of $1,734,000 owed to the Internal Revenue Service, and assessed fines should be reduced or eliminated because the Government wasted the substituted asset.[1] Finally, Rizzolo argues his circumstances

---

[1] Defendant Rizzolo also seeks clarification of his restitution obligation. As discussed at the hearing, the parties are working to clarify the restitution amount and will file supplemental briefing if necessary.

have changed such that he cannot and will not be able to satisfy his obligations.

The United States responds by contending this Court previously has rejected similar arguments by Rizzolo. The Government further argues that it did not waste the asset. Rather, it tried to sell the Crazy Horse Too without success in a declining market after Rizzolo could not sell the property in the year given to him to do so under the plea agreement. Finally, the Government contends Rizzolo has shown a capacity and willingness to divert funds to avoid his obligations, and Rizzolo has the means to earn income to apply toward his obligations. The Government thus contends Rizzolo may have the means to satisfy his obligations in the future.

**A. Forfeiture**

Rizzolo's $4,250,000 forfeiture obligation was not satisfied or extinguished through the substitution of the Crazy Horse Too. Rizzolo forfeited $4,250,000, which the parties anticipated would be satisfied through sale of the Crazy Horse Too. When Rizzolo failed to sell the Crazy Horse Too within the year given to him to do so under the plea agreement, the parties agreed to substitute the Crazy Horse Too and the property on which it sits for the United States to sell the property, with the proceeds to be applied to all of Rizzolo's outstanding obligations, including the forfeiture amount.

The case upon which Rizzolo relies in his brief is distinguishable. In United States v. Paccione, the Government and the criminal defendants entered into a settlement agreement whereby the defendants would confess judgment in the amount of $22 million in full satisfaction of their forfeiture obligations. 948 F.2d 851, 854-55 (2d Cir. 1991). After the defendants defaulted on the required payments under the parties' settlement agreement, the Government sought to substitute assets under the forfeiture statutory scheme. Id. at 854. The Second Circuit held the Government contractually agreed to enforce the parties' settlement agreement through confession of judgment, and thus the Government could not seek to substitute assets under the

forfeiture statutory scheme. Id. at 855-56. Rather, the Government was relegated to the remedies of a judgment creditor. Id.[2]

Here, in contrast, Rizzolo points to no evidence that the parties contractually agreed that the substitution itself, rather than the sale proceeds, extinguished Rizzolo's forfeiture obligation regardless of what the sale of the substituted asset ultimately yielded. Rather, this Court's substitution Order stated that "the substitute assets shall be sold and applied to defendant . . . Frederick John Rizzolo's forfeiture and restitution obligations . . . ." (Order (Doc. #62).) Defendant Rizzolo did not object to this characterization.

Additionally, the First Amended Order of Forfeiture (Doc. #222) identified the $4,250,000 as one of Rizzolo's obligations to be satisfied out of the sale proceeds. In terms of priority, the forfeiture amount was subordinate to over $10 million in other obligations. (Order (Doc. #222) at 8-9.) Thus, it was possible the forfeiture amount would not be satisfied if the sale of the substituted asset did not yield sufficient funds. Rizzolo did not object to the First Amended Order of Forfeiture on the basis that the forfeiture amount had been satisfied upon substitution of the asset regardless of the amount ultimately obtained from the sale of the Crazy Horse Too. The Second Amended Order of Forfeiture (Doc. #242) similarly provided a priority of payment which demonstrates Rizzolo's forfeiture obligation would be satisfied only if the sale of the Crazy Horse Too yielded sufficient funds to cover Rizzolo's forfeiture obligation. Because the ultimate sale of the Crazy Horse Too did not yield sufficient

---

[2] At the hearing in this matter, Rizzolo referred to an agreement between the Securities and Exchange Commission and Ivan Boesky which similarly reflects a contractual agreement between the Commission and Boesky by which the transfer of shares in a company would fulfill Boesky's penalty obligations. Rizzolo has not established that the Government agreed in this case that the act of substituting the asset itself satisfied Rizzolo's forfeiture obligation. Rizzolo also referred to United States v. Yeung, but that case involved the calculation of restitution, and does not discuss forfeiture. 672 F.3d 594, 599-602 (9th Cir. 2012).

funds to satisfy Rizzolo's $4,250,000 forfeiture obligation, that obligation has not been extinguished merely by operation of the substitution of assets. The Court therefore will deny Rizzolo's Motion to the extent it seeks to have the Court declare the $4,250,000 forfeiture deemed satisfied upon substitution of the Crazy Horse Too.

**B. Alleged Waste**

The Court finds no evidentiary basis to reduce the forfeiture, restitution, or fines based on the Government's alleged waste of the substituted asset. As an initial matter, Rizzolo has presented no probative evidence that the value of the Crazy Horse Too was $30 million at the time it was substituted. At the time of substitution, there were offers to purchase the Crazy Horse Too in the $30 million range, but none of the prospective buyers was willing to purchase the property at that price. Fair market value generally is determined by the price a willing buyer would pay a willing seller. See, e.g., Unruh v. Streight, 615 P.2d 247, 249 (Nev. 1980). There were no buyers willing to pay $30 million for the Crazy Horse Too during the year Rizzolo was given to sell the property under the plea agreement, at the time of substitution, or at any time thereafter.

Moreover, Rizzolo has not presented any evidence from which this Court could determine how much, if any, a decline in value was due to alleged waste by the Government versus the dramatic decline in property values during the relevant time frame. Rizzolo was unable or unwilling to sell the property during the year given to him under the plea agreement during more favorable market conditions. In contrast, while the Government owned the property, the nation as a whole experienced an economic recession which devastated Las Vegas in particular. The Court has been presented with no evidentiary basis to reduce Rizzolo's obligations by any particular dollar amount based on the Government's inability to sell the Crazy Horse Too during an increasingly declining market.[3] The Court therefore denies Rizzolo's Motion to the

---

[3] The case Rizzolo relied upon at the hearing, Fischer v. United States, involved a claim by a criminal defendant that the Government had obtained money from the sale of

extent it seeks to reduce his obligations due to alleged Government waste of the substituted asset.

### C. Changed Circumstances

Finally, the Court finds there is no change in circumstances to justify reducing or eliminating Rizzolo's obligations. Rizzolo's prior efforts at concealing assets combined with his ability to earn income weigh against a finding that Rizzolo will have no future ability to pay his obligations. The Court therefore denies Rizzolo's Motion to the extent it seeks to relieve him of his obligations based on an inability to pay in the future.

### D. Conclusion

IT IS THEREFORE ORDERED that Defendant Frederick Rizzolo's Motion to Clarify or in the Alternative Reduce Restitution Order (Doc. #506) is hereby DENIED.

DATED: November 20, 2013

_____
PHILIP M. PRO
United States District Judge

---

forfeited assets in excess of the amount owed on the forfeiture obligation, and thus the Government had to return any excess to him. 96 Fed. Cl. 70, 74, 78 (2011). Here, it is undisputed the proceeds of the sale of the Crazy Horse Too did not cover the original note, much less result in excess proceeds that must be returned to Rizzolo.